# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### GABLEMAN v. PEORIA, D. & E. RY. CO. et al. [1]

#### (Circuit Court of Appeals, Seventh Circuit. March 22, 1900.)

#### No. 546.

REMOVAL OF CAUSES—FEDERAL QUESTION—ACTION AGAINST FEDERAL RECEIVER.
An action in a state court against the receiver of a railroad to recover damages for a personal injury resulting from alleged negligence in the operation of the road is not removable, as a case arising under the constitution or laws of the United States, solely on the ground that the receiver was appointed by a federal court. The liability which is the subject-matter of the action is one arising under general law or state statute, and not dependent on the constitution or any law of the United States; and the appointment of the receiver was, moreover, made under general equity powers common to all courts of chancery.[2]

In Error to the Circuit Court of the United States for the District of Indiana.

W. A. Cullop, for plaintiff in error.

W. S. Horton, for defendants in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

GROSSCUP, Circuit Judge. This action was brought originally in the superior court for Vanderburg County, in the State of Indiana, by the plaintiff in error, a citizen of Indiana, against the defendants in error, to recover damages for personal injuries said to have been sustained by the plaintiff in error through the negligence of the defendants in error in the operation of a railway train, and the failure to properly operate the gates at a railway crossing. The defendant railway company is a corporation organized under the laws of the State of Indiana, and the defendant George Colvin is a citizen of Indiana. The defendant Edward O. Hopkins was, at the time the injuries were received, and the suit was commenced, receiver of the defendant rail-

[1] Rehearing granted and questions certified to the supreme court of the United States.

[2] As to jurisdiction of cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308, and Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.

way company, by appointment of the United States Circuit Court for the Southern district of Illinois, and was, at the time of the injuries, in sole control and management of the railway company; having an office in Vanderburg County, in the State of Indiana. The record does not disclose his place of residence as an individual. In due time after the commencement of the suit the defendant, Edward O. Hopkins, receiver, on his sole petition, removed the cause into the Circuit Court for the District of Indiana, upon the ground that it was a case arising under the Constitution and laws of the United States. A motion to remand was entered by the plaintiff in error, and overruled by the Circuit Court for the District of Indiana (82 Fed. 790); and at the trial, subsequently, a verdict was, by direction of the court, returned for the defendants in error.

The plaintiff in error challenges the jurisdiction of the Circuit Court for the District of Indiana, and the inquiry thus raised lies at the threshold of this case.

The receiver is not appointed under any law or provision of the Constitution of the United States peculiarly relating to a receiver. His appointment arises from the general equity powers of the United States Courts, in common with other courts exercising chancery jurisdiction, to appoint receivers in given cases. If an action against him, such as the one under consideration, can be said to arise under the Constitution and laws of the United States, it is simply because the court making the order of appointment is itself organized under the laws and the Constitution of the United States. In the earliest case (Osborn v. Bank, 9 Wheat. 738, 6 L. Ed. 204), construing the language of the constitution relating to cases arising under the Constitution and laws of the United States, Chief Justice Marshall says:

"We think, then, that, when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it. * * * The case of the bank is, we think, a very strong case of this description. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being thus constituted have a case which does not arise literally, as well as substantially, under the law? Take the case of a contract, which is put as the strongest against the bank. When a bank sues, the first question which presents itself, and which lies at the foundation of the cause, is, has this legal entity a right to sue? Has it a right to come, not into this court particularly, but into any court? This depends on a law of the United States. The next question is, has this being a right to make this particular contract? If this question be decided in the negative, the cause is determined against the plaintiff; and this question, too, depends entirely on a law of the United States. These are important questions, and they exist in every possible case. The right to sue, if decided once, is decided forever; but the power of congress was exercised antecedently to the first decision on that right, and, if it was constitutional then, it cannot cease to be so, because the particular question is decided. It may be revived at the will of the party, and most probably would be renewed, were the tribunal to be changed. But the question respecting the right to make a particular con-

tract, or to acquire a particular property, or to sue on account of a particular injury, belongs to every particular case, and may be renewed in every case. The question forms an original ingredient in every cause. Whether it be in fact relied on or not in the defense, it is still a part of the cause, and may be relied on. The right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up. His right to sue is anterior to that defense, and must depend on the state of things when the action is brought. The questions which the case involves, then, must determine its character, whether those questions be made in the cause or not."

In Railway Co. v. Cox, (145 U. S. 594, 12 Sup. Ct. 905, 26 L. Ed. 829,) the action was by defendant in error, a citizen of Texas, in the United States Circuit Court for the Eastern District of Texas, against John C. Brown and Lionel L. Sheldon, as receivers of the Texas & Pacific Railway Company, to recover damages for the death of the defendant in error. It did not appear that the defendants were citizens of a state other than the plaintiff, and for that failure the jurisdiction of the court was questioned. Fuller, C. J., said:

"The Texas & Pacific Railway Company is a corporation deriving its corporate powers from acts of congress, and was held in Pacific R. Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, to be entitled, under the act of March 3, 1875, to have suits brought against it in the state courts removed to the circuit courts of the United States, on the ground that they were suits arising under the laws of the United States. The reasoning was that this must be so, since the company derived its powers, functions, and duties from those acts, and suits against it necessarily involved the exercise of those powers, functions, and duties, as an original ingredient. * * * In respect of liability, such as is set up here, the receiver stands in the place of the corporation. As observed by Mr. Justice Brown, delivering the opinion of the court, in McNulta v. Lochridge, 141 U. S. 327, 331, 12 Sup. Ct. 11, 13, 35 L. Ed. 796, 800: 'Actions against the receiver are, in law, actions against the receivership, or the funds in the hands of the receiver; and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from funds in his hands.'"

Railway Co. v. Cody, (166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132,) was a case originally commenced by the defendant in error in the district court of Tarrant County, Tex., against the Texas & Pacific Railway Company, to recover for personal injuries, and was removed by the Texas & Pacific Railway Company to the Circuit Court of the United States for the Northern District of Texas. In the petition filed by the defendant in error in the state court at the commencement of the suit, the Texas & Pacific Railway Company was designated as a private corporation created and existing under the laws of the State of Texas, the same state of which the defendant in error was a citizen, but in the petition for removal it was stated that at the commencement of the suit the railway company was a corporation organized under and by virtue of certain Acts of Congress. The gist of the decision is that, notwithstanding the defendant in error's misstatement in the original petition respecting the governmental origin of the railway corporation, the railway company may, by petition for removal, bring to the court the fact that it is a corporation under the laws of the United States. It necessarily follows, upon the principle stated in Railway Co. v. Cox, supra, that the Circuit Court of the United States had jurisdiction. It will be observed that in these cases the parties invoking jurisdiction were either corporations organized under laws of the United States, and deriving their rights to

sue and be sued, and their general rights to carry on business, therefrom, or were successors in trust to such corporations. The cases therefore fall within the principles announced by Chief Justice Marshall in Osborn v. Bank, supra.

Cases of another class, however, have been called to our attention, in support of the court's jurisdiction. Buck v. Colbath, (3 Wall. 334, 18 L. Ed. 257,) and Feibelman v. Packard, (109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984,) were actions against the United States marshal. The first was prosecuted through the state courts, coming to the Supreme Court on error to the state court. The second, begun originally in the state court, was removed by the marshal into the Federal Court.

In the case first named, the suit was against the marshal, to recover in trespass for the taking of goods, and the defense was that the goods were taken by virtue of a writ of attachment taken out of a United States Court. The principle on which that case was decided was stated by Mr. Justice Miller as follows:

"Whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being, and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises."

In the second case the action was against the marshal, and his sureties on his official bond, to recover for an alleged illegal seizure of goods. The bond was required and governed by sections 783 and 784 of the United States Revised Statutes, the latter of which expressly gave the right of action, and governed the amount of damages. In deciding the case, Mr. Justice Matthews said:

"The counsel for plaintiff in error assumes in argument that the suit was to recover damages for alleged trespass. It was plainly upon the bond itself, and therefore arose directly under the provisions of an act of congress."

White v. Ewing, (159 U. S. 36, 15 Sup. Ct. 1018, 40 L. Ed. 67,) was a case arising out of, and ancillary to, a creditors' bill previously brought by George P. Bosworth, a citizen of Massachusetts, against the Cardiff Coal & Iron Company, a corporation of Tennessee, in the Eastern District of Tennessee, setting forth the insolvency of the company, the wasting of its assets, etc., and praying for a sale of the property, the collection of its choses in action, and the appointment of a receiver. Ewing was appointed receiver, and, upon authority of the court obtained in the original action, instituted suit in the United States Circuit Court for the Eastern District of Tennessee against White and others, to recover upon promissory notes previously executed by White and others to the Cardiff Coal & Iron Company, and constituting a part of its assets. The decision in this case went upon the principle that suits ancillary to the receivership fall to the jurisdiction of the court appointing the receiver; in other words, that the diversity of citizenship that gave to the United States Circuit Court jurisdiction in the original case was carried over to all strictly ancillary suits. This has been frequently decided since in other cases. (Krippendorf v. Hyde, 110

U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, and Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498.)

In none of these cases was the order of the Circuit Court of the United States appointing a receiver, standing alone, found to be the basis of federal jurisdiction; nor is such a case to be found in the decisions of the supreme court.

The case now under consideration is not, properly speaking, ancillary to the case brought in the Circuit Court of the Southern District of Illinois, in which the receiver was appointed. It does not aid or supplement the purposes of that suit. It is not brought by the receiver, but against him. It is not intended directly to increase or diminish, or in any way affect, the assets intrusted to him, whatever may be its incidental effect; and it involves the inquiry simply whether the receiver's conductor, or the receiver himself, was guilty of negligence in the operation of the train, or in the failure to maintain the gates. It is no more ancillary to the transactions involved in the original suit than would be an action brought upon a receiver's purchase of coal to operate the locomotives.

Nor is the case one of those in which a court, having rightly obtained possession of property, will refuse, except upon inquiry in its own forum, to surrender the property to the direction of another court. The suit is not to transfer property from the receiver to another upon inquiry of the state court, but merely to fix his liability for noncompliance, in his operation of the road, with the ordinance of the city, the statutes of the state, and the common law governing his duties as a railway manager.

The case is not one that involves, as a necessary ingredient, inquiry into the statutes of the United States, or any provision of the Federal Constitution, such as was involved in Osborn v. Bank, Railway Co. v. Cox, and Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., supra. Indeed, the case can be decided, and decided rightly, without looking into either the Federal Constitution or the statutes. No Federal law lies at the basis of the receiver's right, in this class of cases, to either sue or defend,—certainly not to defend. No Federal law governs his liability in the matter complained of. The subject-matter of the suit, from beginning to end,—from the question of the receiver's liability to suit, to and including the principles that shall give direction to the suit, and govern the amount of damages,—is determinable solely according to general laws, or the law of the state where the injuries were committed. Nor are the appointment of the receiver itself, and the power of the court to make such appointment, traceable directly to Federal law. They grow out of the law of general chancery jurisdiction, which, of course, was conferred originally upon the courts by the Constitution and laws of the United States; but they are as remote from this origin as is an action of ejectment, growing out of a land patent in which the validity of the patent is not involved, or an action upon a judgment obtained in one of the United States Courts. Assurance Soc. v. Ford, (114 U. S. 635, 5 Sup. Ct. 1104, 29 L. Ed. 261.) The case under consideration, in no just sense, therefore, involves the

validity, the scope, or the effect of any right, derived from the Constitution and laws of the United States, of federal courts to appoint this receiver, and put him in possession of the property.

The conclusion thus reached is, we think, sustained by the case of Pope v. Railway Co., (173 U. S. 573, 19 Sup. Ct. 500, 43 L. Ed. 814.) The action reviewed by the Supreme Court in that case was brought originally in the Circuit Court for the District of Indiana by Pope, a citizen of Illinois, suing as receiver of the Chicago & South Atlantic Railroad Company, against the Louisville, New Albany & Chicago Railway Company of Indiana. The action was properly ancillary to other suits,—the one brought by a citizen of Wisconsin in the Circuit Court for the Northern District of Illinois, against the Chicago & South Atlantic Railroad Company, a consolidated corporation of Illinois; and the other in the Circuit Court for the District of Indiana, brought by the same citizen of Wisconsin against the same defendant, but designated in that suit as a corporation organized under the laws of Indiana. In the suit in the Illinois circuit court, Pope had been appointed as receiver, in succession to one Fish; and in the suit in Indiana, Pope was appointed as the original receiver. Both suits were for the same purpose, namely, for the administration of the affairs of the Chicago & South Atlantic Railroad Company; and in both the receiver was authorized to prosecute all necessary suits for the collection of claims, choses in action, or otherwise, touching the rights or interests of such property. The action brought by Pope against the Louisville, New Albany & Chicago Railway Company, under review by the Supreme Court, was in pursuance of this order.

Defeated in the Circuit Court of Appeals in the prosecution of his suit against the Louisville, New Albany & Chicago Railway Company (26 C. C. A. 131, 80 Fed. 745), Pope sought to appeal to the Supreme Court as of right, upon the ground that suing as a receiver of a Federal Court, the case arose under the Constitution and laws of the United States. The Supreme Court ruled that the suits were ancillary to the original cases out of which the receivership grew, and were on that account dependent for their jurisdiction upon the facts constituting jurisdiction in the original cases. (18 Sup. Ct. 945, 42 L. Ed. 1216.) But after so ruling, the court, through Fuller, C. J., believing that "some further observation might be usefully added," although what had been said disposed of the motion, took up, as we understand the text, the general question whether suits thus brought by receivers, not ancillary to other suits, but depending wholly for jurisdiction upon the fact that the receiver was appointed by a Federal Court, were, within the meaning of the law, suits arising under the Constitution and laws of the United States. The court, through the Chief Justice, said:

"The bill nowhere asserted a right under the constitution and laws of the United States, but proceeded on common-law rights of action. We cannot accept the suggestion that the mere order of a federal court, sitting in chancery, appointing a receiver on a creditors' bill, not only enables the receiver to invoke federal jurisdiction, but to do this independently of the ground of jurisdiction of the suit in which the order was entered, and thereby affect the finality of decrees in the circuit court of appeals in proceedings taken by him.

The validity of the order of appointment of the receiver in this instance depended on the jurisdiction of the court that entered it, and the jurisdiction, as we have seen, depended exclusively upon the diverse citizenship of the parties to the suits in which the appointment was made. The order, as such, created no liability against defendants; nor did it tend in any degree to establish the receiver's right to a money decree, nor to any other remedy prayed for in the amended bill. The liability of defendants arose under general law, and was neither created nor arose under the constitution or laws of the United States. In Bausman v. Dixon, 173 U. S. 113, 19 Sup. Ct. 316, 43 L. Ed. 633, we have ruled that a judgment against a receiver appointed by a circuit court of the United States, rendered in due course in a state court, does not per se involve the denial of the validity of an authority exercised under the United States, or of a right or immunity specially set up and claimed under a statute of the United States. That was an action to recover damages for injuries sustained by reason of the receiver's negligence in operating a railroad company of the state of Washington, though the receiver was the officer of the circuit court, and we said: 'It is true that the receiver was an officer of the circuit court, but the validity of his authority as such was not drawn in question; and there was no suggestion in the pleadings, or during the trial, or, so far as appears, in the state supreme court, that any right the receiver possessed as receiver was contested, although on the merits the employment of plaintiff was denied, and defendant contended that plaintiff had assumed the risk which resulted in the injury, and had also been guilty of contributory negligence. The mere order of the circuit court appointing a receiver, did not create a federal question, under section 709 of the Revised Statutes; and the receiver did not set up any right derived from that order, which he asserted was abridged or taken away by the decision of the state court. The liability to Dixon depended on principles of general law applicable to facts, and not in any way on the terms of the order.' That was, indeed, a writ of error to a state court, but the reasoning is applicable here. Pope was appointed receiver by an interlocutory order of the circuit court in the exercise of its general equity powers. He did not occupy the position of a receiver of a corporation created under federal law, as in Railway Co. v. Cox, 145 U. S. 594, 12 Sup. Ct. 905, 26 L. Ed. 829, or of a marshal of the United States, as in Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984, or of a receiver of a national bank, as in Kennedy v. Gibson, 8 Wall. 498, 19 Sup. Ct. 476. Nor did his cause of action originate or depend on the order of appointment, or assignments made to him by the Atlantic Company pursuant to that order. Nor was any right claimed by him by virtue of his order of appointment, or of his deeds of assignment denied, or alleged to have been denied. * * * It is impossible to hold that these orders of appointment were equivalent to laws of the United States, within the meaning of the constitution."

We regard this portion of the opinion as an ex cathedra announcement against the doctrine that suits begun in state courts against receivers of Federal Courts are removable into the Federal Court upon the ground alone that the receivers are appointed under an order of the Federal Court. Indeed, it would be anomalous—and this consideration probably moved the Supreme Court to speak—if such incidental actions against the receiver as the one now under consideration by us could be appealable of right to the Supreme Court, as it could if removable at all, while the original action, to which he owed his appointment, rested finally with the Circuit Court of Appeals. Maintenance of such a view of the rights of receivers would carry to the court of last resort all the driftwood of a receivership, while leaving with the Circuit Court of Appeals, except in rare instances of certiorari, direction and control of the stream.

The case is reversed, with directions to the Circuit Court for the District of Indiana to sustain the motion to remand.